IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KELLY J. POLATIS,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:10-CR-0364-CW<br><br>Judge Clark Waddoups |
|---|---|

## INTRODUCTION

Before the court are various motions. Defendant's motion for notice of government's intent to use evidence is granted and the corresponding motion to strike is denied as moot. Defendant's motion to dismiss for outrageous government conduct and simultaneous request for an evidentiary hearing are denied. Defendant's motion to dismiss for vindictive prosecution is denied. Defendant's second motion for discovery is denied without prejudice. Defendant's motion to compel is denied.

## DISCUSSION

**I.   DEFENDANT'S MOTION FOR NOTICE OF GOVERNMENT'S INTENT TO USE EVIDENCE[1] and MOTION TO STRIKE GOVERNMENT'S SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION FOR NOTICE OF GOVERNMENT'S INTENT TO USE EVIDENCE[2]**

Defendant first moves for an order directing the government to give notice of its intent to use specified evidence at trial. (Def.'s Mot. Notice Gov't Intent Use Evidence, 1) (Dkt. No. 85). Defendant moves pursuant to Fed. R. Crim. P. 12(b)(4)(B), which states:

> At the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice

---
[1]   (Dkt. No. 85.)
[2]   (Dkt. No. 127.)

1

of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.

Fed. R. Civ. P. 12(b)(4)(B).

The government contends that Defendant did not move "at the arraignment or as soon afterward as practicable," and that the motion cut-off date of June 4, 2010 has now passed. (Gov.'s Mot. Opp'n Notice Intent, 2) (Dkt. No. 95). Indeed, "[a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides." Fed. R. Crim. P. 12(e).[3] That being said, Rule 12(e) also states that "[f]or good cause, the court may grant relief from the waiver." *Id.* As such, the question before the court is whether the deadline for such a motion has passed, and if so, whether good cause exists for the court to grant relief from the waiver.

Defendant argues that because a continuance of trial was granted by Judge Kimball due to the complexity of the case, the order should be read to have implicitly vacated the previously set deadlines, meaning his motion for notice was neither untimely nor waived. (Def.'s Reply Mot. Notice Intent, 4-5) (Dkt. No. 107). Whether it was the court's intention to vacate the prior deadlines is unknown, but ultimately unimportant. The court is empathetic to the fact that the order granting Defendant's motion to continue the trial could cause some confusion. This is not to say that Defendant should not have asked for a clarification of the court's order earlier. But whatever confusion did exist, the court is satisfied that good cause has been shown and that relief of the waiver should be granted.[4] Accordingly, Defendant's motion is granted[5] and his motion to strike is denied as moot.[6]

---

[3] The court rejects Defendant's contention that the Rule 12(e) waiver only applies to Rule 12(b)(3)(C) and not Rule 12(b)(4)(B). The substance of a Rule 12(b)(4)(B) motion is to provide notice for the purpose of bringing a motion to suppress evidence. Thus, if the motion to suppress under Rule 12(b)(3)(C) is waived, Rule 12(b)(4)(B) is stripped of purpose and the motion to provide notice is without substance.

[4] The court interprets Rule 12(e) "to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Fed. R. Crim. P. 2.

[5] (Dkt. No. 85.)

[6] (Dkt. No. 127.)

The briefing on the motion to strike raises a further issue that the court believes may be helpful to the parties to address. Several issues were first raised in briefing or oral argument after the initial briefing had been completed.[7] The court recognizes that as counsel gain a more complete understanding of the issues and the arguments being made in the case, and on some occasions a greater appreciation of the concerns of the court, there may be a legitimate need to supplement earlier citations to the record or legal authorities and to respond more fully to the arguments of opposing counsel. The rules contemplate that leave of the court should be sought and granted to address these circumstances. It is, however, most helpful to the court to have the issues thoroughly addressed in the initial briefing. Indeed, courts have repeatedly recognized that failure to raise arguments in the briefing is a legitimate basis for the court to disregard such arguments. *See Haynes Trane Serv. Agency v. Am. Std., Inc.*, 573 F.3d 947, 959 (10th Cir. 2009) (stating "we do not ordinarily review arguments raised for the first time in a reply brief."). Given the limited resources available to the court and the demands of the current docket, the court would request counsel to give careful consideration to this issue in further briefing.

## II. DEFENDANT'S MOTION TO DISMISS FOR OUTRAGEOUS GOVERNMENT CONDUCT[8]

The claim of outrageous government conduct poses a very high hurdle for Defendant to clear and is only applied in the most egregious of circumstances. *See United States v. Diaz*, 189 F.3d 1239, 1245 (10th Cir. 1999). Indeed, the "governmental conduct must be so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Holler*, 411 F.3d 1061, 1065-66 (10th Cir. 2005). The Tenth Circuit has focused this analysis by looking at the "totality of the circumstances" and required a defendant to show either "(1) excessive government involvement in the creation of the crime, or (2) significant governmental coercion to induce the crime." *United States v. Worthon*, 520 F.3d 1173,

---

7     *See, e.g.*, (Dkt. Nos. 41, 120, 142).
8     (Dkt. No. 90.)

1181 (10th Cir. 2008).[9]  That being said, it is important not to construe this standard so narrowly as to prohibit government actors from "infiltrat[ing] an ongoing criminal enterprise, or [inducing] a defendant to repeat, continue, or even expand previous criminal activity." *United States v. Pedraza*, 27 F.3d 1515, 1521 (10th Cir. 1994).

### A. Excessive Government Involvement in the Creation of the Crime

Regarding this factor, the Tenth Circuit has stated:

> Government creation of the crime occurs when there has been excessive governmental involvement in generating a new crime solely to prosecute it or in inducing a defendant to become involved in the crime for the first time, rather than merely interposing itself in an ongoing criminal enterprise. Excessive governmental involvement occurs when the government engineers and directs the criminal enterprise from start to finish and the defendant contributes nothing more than his presence and enthusiasm.

*United States v. Sneed*, F.3d 1570, 1577 (10th Cir. 1994).  *See also, Kett v. United States*, 722 F.2d 687, 689 (11th Cir. 1984) (stating that a government agent may provide "something for value," but may "not instigate the criminal activity, provide the place, equipment, supplies, and know-how, and run the entire operation with only meager assistance from the defendants.").

Defendant contends that this is precisely what was done, in that the "government engineered the criminal activity . . . from beginning to end." (Mot. Dismiss. Outrageous Gov't Conduct, 9) (Dkt. No. 90). The court disagrees. First, Defendant has failed to provide any evidence that a government actor was the first to introduce the murder-for-hire idea to Mr. Polatis or that the murder-for-hire idea was all a "government-hatched scheme." (Mot. Dismiss Outrageous Gov't Conduct, 8-9.)  There is no evidence that the government began actively participating in the murder-for-hire investigation until after the confidential informant had already contacted Agent Morgan and reported Defendant's alleged desire to murder a witness in his underlying case. *Compare* (Gneckow Aff., ¶ 4-5) (Dkt. No. 117-1) *with* (Mot. Dismiss Outrageous Gov't Conduct, 3).  Indeed, the evidence shows that Detective Morgan was contacted on or about January 13, 2009 by the confidential informant. (Gov't Supplemental Mem. Ex. A, 1) (Dkt. No. 142-1).  After Agent Gneckow was assigned to the case, he was initially concerned

---

[9] The court notes that although the Tenth Circuit has embraced the *Isaacson* test as articulated by the New York Court of Appeals, it has not limited the analysis to its four factors.  *See United States v. Mosley*, 965 F.2d 906, 910 n.4 (10th Cir. 1992).

about whether the Defendant "was serious or was just angry and making statements he did not mean." (Dkt. No. 117-1 ¶ 4.) As a result, he instructed the confidential informant to continue his relationship with the Defendant and to advise the FBI if he made statements indicating he was serious about killing witnesses. *Id.*[10] The FBI first became actively involved no earlier than February 6, 2009 when the agent instructed the confidential informant to record conversations between himself and the Defendant.[11] The evidence thus supports a finding that the Defendant had already stated his criminal intent before the FBI became involved. (Mot. Dismiss Outrageous Gov't Conduct, 2-3.)

Second, Defendant has produced no evidence to support a finding that the confidential informant's initial report to Agent Morgan was untruthful. Third, it is not enough to show that the confidential agent "repeatedly suggested that Polatis consider the criminal activity." *See* (Mot. Dismiss Outrageous Gov't Conduct, 8.) Indeed, repetition, continuance, or expansion of a criminal enterprise will not alone violate a defendant's constitutional rights. *See Pedraza*, 27 F.3d at 1521. Accordingly, the Defendant has failed to offer credible evidence that the government was excessively involved in the creation of the crime.

### B. <u>Significant Governmental Coercion to Induce the Crime</u>

Defendant also argues that he was coerced to participate in the murder-for-hire scheme by government participants. It is important to note that to succeed on this requirement the Defendant must provide evidence that the government's conduct must be "substantially coercive to the point of being outrageous." *Sneed*, 34 F.3d at 1578. To qualify as outrageous, the alleged coercion must meet a high standard. The Tenth Circuit has provided a variety of examples that do not qualify as outrageous: "[g]overnment agents may employ appropriate artifice and deception in their investigation. They may

---

[10] The court notes that the agent does not provide any additional statements that the Defendant had made when the agent decided to proceed with a further undercover operation. He testified only that the confidential informant had advised him that "he [the confidential informant] believed Polatis to be serious about hiring someone to kill witnesses in the drug case." (Dkt No. 117-1 ¶ 5.) One would reasonably expect that the agent would require more concrete proof than the confidential informant's "belief" before proceeding, but that fact is not sufficient to change the conclusion the court has reached.
[11] *See* (Dkt. No. 90-2, 2).

5

make excessive offers. Agents may even utilize threats or intimidation if not exceeding permissible bounds." *United States v. Mosley*, 965 F.2d 906, 912 (10th Cir. 1992) (internal citations omitted).

In establishing his claim, Defendant proffers several arguments. He first contends that the May 13, 2009 meeting was held under false pretenses. (Def.'s Reply Mot. Dismiss Gov't Outrageous Conduct, 3) (Dkt. No. 123). Deception without more, however, is insufficient to find outrageous conduct. *Mosley*, 965 F.2d at 912 (stating, "Government agents may employ appropriate artifice and deception in their investigation.") (citations omitted). If all meetings were held under similar pretenses, the matter before the court may be different. Based on the evidence, however, the court finds that an isolated instance of pretense does not constitute coercive inducement.

Second, Defendant also argues that Agent Rogers "provided several hundred dollars to [him] with which to gamble at the MGM Grand meeting on May 13, 2009," for the purpose of "psychologically oblig[ing] [him] to listen to Rogers' suggestions . . . ." (Def.'s Reply Mot. Dismiss Gov't Outrageous Conduct, 6.) Nothing in the case law before the court suggests that such modest sums of money equate to "significant governmental coercion." This contention is likewise, rejected.

Defendant's last contention is that "the government played on and exploited [his] alcohol problem by suggesting to meet or agreeing to meet [him] in a bar each time he met with government agents to discuss the murder-for-hire scheme." (Mot. Dismiss Outrageous Gov't Conduct, 10.) Even if true, this argument also fails. The fact that Defendant willingly met with government agents multiple times to discuss the murder-for-hire scheme is evidence enough that whatever his participation, it was voluntary and not coerced.

### C. The Government's Interference Sixth Amendment Right to Counsel

Defendant further asserts that Defendant's Sixth Amendment right to counsel was violated because the government agent's in the murder-for-hire case elicited incriminating statements in the absence of counsel, and that this violation is further evidence of the government's outrageous conduct. (Mot. Dismiss Outrageous Gov't Conduct, 10.) The Tenth Circuit has stated:

> The Sixth Amendment forbids the government from eliciting incriminating statement from a defendant outside the presence of counsel. But . . . this protection is offense specific. It attaches only to charged offenses – that is, offenses for which adversary judicial criminal proceedings have begun, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. Accordingly, the government remains free to seek uncounseled statements from a defendant about *uncharged* offenses without offending the Sixth Amendment."

*United States v. Mullins*, 613 F.3d 1273, 1286 (10th Cir. 2010).

This is precisely the case at hand. Although Defendant may have been represented by counsel in his underlying marijuana case, the actions of government agents in this case occurred in relation to the murder-for-hire investigation, which at the time was an uncharged offense. Accordingly, Defendant's protected rights under the Sixth Amendment were not violated.

Because Defendant has failed to carry his burden and demonstrate that the government was either excessively involved in the creation of the murder-for-hire scheme, or significantly coerced Defendant into committing the alleged crime, his motion to dismiss for outrageous government conduct is denied.

### D. Defendant's Request for an Evidentiary Hearing

"The test for granting an evidentiary hearing in a criminal case should be substantive: did the defendant make a sufficient threshold showing that material facts were in doubt or dispute?" *United States v. Panitz*, 907 F.2d 1267, 1273-74 (1st Cir. 1990). As stated above, Defendant has failed to show that a dispute of material fact exists relating to his allegation of outrageous government conduct. Indeed, any disputed facts as presented by Defendant in his motion are immaterial and will have no bearing on the outrageous governmental conduct analysis. Defendant's request for an evidentiary hearing is therefore denied.

### III. DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION OF DEFENDANT[12]

The Tenth Circuit has stated that the "focus in analyzing a claim of prosecutorial vindictiveness must be whether as a practical matter, there is a realistic or reasonable likelihood of prosecutorial

---
[12] (Dkt. No. 91.)

conduct that would not have occurred but for hostility or punitive animus toward the defendant because he exercised his specific legal right." *United States v. Contreras*, 108 F.3d 1255, 1262 (10th Cir. 1997) (internal citations omitted). To establish prosecutorial vindictiveness, Defendant must show either "(1) actual vindictiveness or (2) a realistic likelihood of vindictiveness which gives rise to the presumption of vindictiveness." *United States v. Thomas*, 410 F.3d 1235, 1247 (10th Cir. 2005). Furthermore, "[o]nce the defendant has made this showing, the burden shifts to the prosecution to justify its charging decisions with legitimate, articulable, objective reasons." *Id.* (internal citations omitted). In this case, Defendant has not argued actual vindictiveness, nor presented any evidence of a prosecutor's "punitive motivation." *See United States v. Jenkins*, 504 F.3d 694, 699 (9th Cir. 2004). Rather, Defendant argues for a presumption of vindictiveness, which claim will be successful if he can show that the criminal charges in this case "were filed because he exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness." *Id.* (citations omitted).

Defendant relies heavily on *Jenkins*, 504 F.3d 694. In *Jenkins*, the Ninth Circuit found that an alien smuggling charge was vindictively prosecuted after the defendant testified in her defense in a prior marijuana case. In explaining this decision, the court stated:

> Indeed, the government admitted that prior to Jenkin's testimony it "had enough to go forward, unquestionably [on the alien smuggling charges]," and that it "could have brought charges earlier on." In these circumstances, the government's decision to press charges only after Jenkins asserted a reasonably credible defense to the marijuana importation charges raises, at the very least, a "reasonable or realistic likelihood" that the government's decision was motivated by a retaliatory purpose . . . [and] that the government's conduct [therefore] created the appearance of vindictiveness.

*Jenkins,* 504 F.3d at 700.

At first blush, it would seem that *Jenkins* and the case at hand both show a correlation between the defendant's decision to exercise a protected right and the government's decision to prosecute. Indeed, Defendant alleges that although the government had acquired all the evidence it needed to indict on the murder-for-hire charge no later than June 9, 2009, the government delayed bringing charges against him until April 6, 2010, 10 months after it had all the required evidence and just hours after

8

Defendant had exercised his constitutional right for a trial by jury and was acquitted. (Def.'s Mot. Dismiss Vindictive Prosecution, 3) (Dkt. No. 91). Defendant argues that the aggregate of evidence, including allegations of mistreatment and government dishonesty, sustain a likelihood of vindictive prosecution supporting a presumption of vindictiveness.

Assuming all of Defendant's contentions were true, Defendant's motion fails for a more basic reason. In *Jenkins* the prosecution conceded that it had sufficient evidence to proceed to prosecute on the alien smuggling charge before the defendant exercised her right to testify in her own behalf. The court explained that to prevail on her claim of vindictive prosecution the defendant needed to "demonstrate a *reasonable likelihood* that the government would not have brought the alien smuggling charges had she not elected to testify at her marijuana smuggling trial and present her theory of the case." *Jenkins,* 504 F.3d at 700. The court concluded that given the fact that the smuggling case "essentially was open and shut" before the defendant had testified there was enough evidence to support a "realistic likelihood" that the decision to prosecute was motivated by a "retaliatory purpose."

In this case, Defendant also exercised his right to a trial by a jury. There is no evidence, however, that the decision by the government to prosecute on the murder-for-hire charge was triggered by the Defendant exercising that right. To the contrary, the evidence would allow an inference that the decision to prosecute was triggered by the Defendant's acquittal. The government's decision to immediately press charges following the acquittal is better explained by the government's concern that the Defendant not be set free than by an inference that the government was retaliating because the Defendant exercised his right to a trial. The decision by the Defendant to proceed to trial did not trigger any prosecution by the government on the murder-for-hire charges. Only after the Defendant was acquitted did the government act. Thus, Defendant's acquittal rather than his exercise of the right to trial triggered the government action.

The Tenth Circuit has recognized this distinction: "[T]he acquittal itself cannot form the basis for a charge of prosecutorial vindictiveness. 'When a State brings another indictment supported by

9

evidence against a defendant after an acquittal, the acquittal is a legitimate prosecutorial consideration because the State is not levying punishment for a right exercised but rather for the crimes he committed.'" *United States v. Wall*, 37 F.3d 1443, 1449 (10th Cir. 1994) (quoting *United States v. Esposito*, 968 F.2d 300, 304 (3d Cir. 1992)).

Moreover, the courts have been cautious not to infer vindictiveness in cases involving the defendant's exercising the right to a trial without more corroborating evidence. For example, the Ninth Circuit court distinguished the facts in *Jenkins* from the facts in *United States v. Martinez*, 785 F.2d 663 (9th Cir. 1986) by stating that the defendant in *Martinez* "could have exercised no right in the first . . . trial that would have affected the subsequent . . . indictment." *Jenkins*, 504 at 701. In other words, there is no reason on this record to conclude that the Defendant would have avoided prosecution on the murder-for- hire charge if he had been convicted, rather than acquitted on the drug charges. There is no evidence to corroborate the assertion that the prosecution here was in some way linked to his demand for a trial.[13]

This court does not mean to suggest that a defendant's exercise of his right to trial by jury could never be a basis for inferring a presumption of vindictive prosecution. The corroborating evidence may support, for example, that the defendant was pressured by the government to accept a plea deal and prosecution of other crimes followed when he refused. But this is not the case here. Accordingly, based on the evidence presented the court finds that Defendant has failed to present sufficient evidence that the government proceeded on the charges here in retaliation for any right the Defendant exercised in his prior marijuana case. Absent such evidence Defendant's motion fails.

---

[13] In *United States v. Wall*, the Tenth Circuit found that that although prosecutors brought additional felony counts with increased risk of imprisonment and fines after defendant's original trial was declared a mistrial, there was no vindictive prosecution because (1) he did not identify a right with respect to which the government retaliated, and (2) the consequences were lawful and due to his own tactical decisions. 37 F.3d 1443, 1448 (10th Cir. 1994). The Tenth Circuit in *United States v. Contreras* similarly found that in the case of a mistrial, the defendant's claim of vindictive prosecution failed where she "failed to exercise a specific legal right." 108 F.3d 1255, 1263 (10th Cir. 1997).

**IV.     DEFENDANT'S MOTION FOR SECOND MOTION FOR DISCOVERY**[14]

On December 20, 2010, Defendant moved for pre-trial discovery pursuant to Fed. R. Crim. P. 12(b) and 16, asking for an order compelling the government to produce a variety of records and information. (Def.'s Second Mot. Disc., 1) (Dkt. No. 101). The government's response stated that it was unable to respond to the discovery request by the time the motion was filed, due to a trial in another case. (Gov't Response Def.'s Second Mot. Disc., 2) (Dkt. No. 102). The court therefore denies the motion without prejudice. Defendant may again move for a similar order and is permitted to re-raise issues that were denied in this motion if he believes he has not been given discoverable evidence or material he is otherwise entitled to receive.

**V.     DEFENDANT'S MOTION TO COMPEL**[15]

Defendant's motion to compel is denied.

**CONCLUSION**

For the reasons set-forth herein, the court orders:

1) Defendant's motion for notice of government's intent to use evidence is GRANTED.[16]

2) Defendant's motion to strike government's supplemental response to defendant's motion for notice of government's intent to use evidence is DENIED as moot.[17]

3) Defendant's request for an evidentiary hearing on his motion to dismiss for outrageous conduct is DENIED because Defendant has failed to show that there are material facts in doubt or dispute. With no material facts in dispute, the court also holds that Defendant has failed to carry his burden and demonstrate that the government was either excessively involved in the creation of the murder-for-hire scheme, or significantly coerced Defendant

---

[14] (Dkt. No. 101.)
[15] (Dkt. No. 119.)
[16] (Dkt. No. 85.)
[17] (Dkt. No. 127.)

into committing the alleged crime. Defendant's motion to dismiss for outrageous conduct is therefore DENIED.[18]

4) Defendant's motion to dismiss for vindictive prosecution is DENIED because he has failed to demonstrate that he was vindictively prosecuted for exercising a protected right.[19]

5) Defendant's second motion for discovery is DENIED without prejudice.[20]

6) Defendant's motion to compel is DENIED.[21]

DATED this 3rd day of May, 2011.

BY THE COURT:

Clark Waddoups

United States District Judge

---

[18] (Dkt. No. 90.)
[19] (Dkt. No. 91.)
[20] (Dkt. No. 101.)
[21] (Dkt. No. 119.)